DOCUMENT FOR PUBLIC RELEASE.  The decision issued on July 5, 2023, is subject to an ASBCA Protective Order.  This version has been approved for public release.

ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of - | ) | |
| | ) | |
| Northrop Grumman Corporation | ) | ASBCA No. 62165 |
| | ) | |
| Under Contract No. F33657-01-C-4600 | ) | |

APPEARANCES FOR THE APPELLANT:
Thomas A. Lemmer, Esq.
K. Tyler Thomas, Esq.
  Dentons US LLP
  Denver, CO

APPEARANCES FOR THE GOVERNMENT:
Samuel W. Morris, Esq.
  DCMA Chief Trial Attorney
Kara M. Klaas, Esq.
  Trial Attorney
  Defense Contract Management Agency
  Chantilly, VA

OPINION BY ADMINISTRATIVE JUDGE STINSON
ON CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT

Appellant Northrop Grumman Corporation (Northrop Grumman or NG) appeals from a Defense Contract Management Agency (DCMA) corporate administrative contracting officer (CACO) final decision disallowing certain of Northrop Grumman's pension costs contained in its Incurred Cost Submission for Fiscal Year (FY) 2012. At issue is Northrop Grumman's reimbursement request for certain nonqualified defined-benefit "pay-as-you-go" pension plans which utilize a Retirement Benefits Formula that includes as a factor the plan participants' actual compensation earned and does not exclude compensation in excess of the cap set forth in Federal Acquisition Regulation (FAR) 31.205-6(p) that was in effect at the time the plan participants earned their compensation.

On November 6, 2020, appellant filed a motion for partial summary judgment on counts I and II of its complaint (app. mot. at 1).[1]  On December 21, 2020, the

---

[1] "App. mot." refers to appellant's November 6, 2020, motion for partial summary judgment; "gov't cross-mot." refers to the government's December 21, 2020, opposition to appellant's motion for partial summary judgment and cross-motion for partial summary judgment; "app. resp." refers to appellant's May 17, 2022, reply in support of its motion for summary judgment and response in opposition to the government's cross motion; "gov't reply" refers to the government's June 30,

government filed its opposition to appellant's motion for partial summary judgment and a cross-motion for partial summary judgment (gov't cross-mot. at 1, 36).  The parties' cross-motions addressed the government claim regarding the disallowance of appellant's pension costs pursuant to FAR 31.201-6, ACCOUNTING FOR UNALLOWABLE COSTS.  The government's motion included a challenge to appellant's pension costs as unreasonable costs pursuant to FAR 31.201-3, DETERMINING REASONABLENESS (gov't cross-mot. at 8).

On January 19, 2021, Northrop Gruman submitted a partial motion to dismiss for lack of jurisdiction or, in the alternative, motion to strike, alleging that the Board lacked jurisdiction to consider the government's argument that the pension costs were unallowable under FAR 31.201-3 because the issue was not addressed by the CACO in the contracting officer's final decision (COFD).  By decision dated August 4, 2021, we denied appellant's partial motion to dismiss or, in the alternative, motion to strike, finding that we had jurisdiction to consider the government's reasonableness challenge to Northrop Gruman's pension costs.  *Northrop Gruman Corp.*, ASBCA No. 62165, 21- 1 BCA ¶ 37,922 at 184,179 (*Northrop Gruman I*).

Both parties now have fully briefed their respective motions for partial summary judgment.  For the reasons stated below, we deny appellant's motion for partial summary judgment and grant the government's cross-motion for partial summary judgment.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

The parties submitted a Joint Stipulation of Undisputed Material Facts (JSUMF) in support of their cross-motions for partial summary judgment.  Neither party has identified any genuine issue as to any material fact and we find that there is no genuine issue as to any material fact.  Our statement of facts relies upon, and adopts, certain of the parties' JSUMF, as set forth below.

1.  In FY 2012, Northrop Gruman performed flexibly-priced contracts which contained FAR 52.216-7, ALLOWABLE COST AND PAYMENT (JSUMF ¶ 1).

2.  Northrop Gruman's Incurred Cost Submission for FY 2012, dated June 27, 2013, included pension costs incurred pursuant to certain Northrop Gruman nonqualified defined-benefit pension plans, which for government contract purposes, accounted for such costs on a pay-as-you-go basis (JSUMF ¶¶ 2-4, 7).  Certain pension plan participants who received pension benefits in FY 2012 earned compensation during

2022, reply brief; and "app. reply" refers to appellant's August 15, 2022, reply brief on the issue of reasonableness under FAR 31.201-3.

their working years in excess of the limitation or cap set forth in FAR 31.205-6(p).[2] Northrop Grumman included in its Retirement Benefit Formulas a compensation factor based, in part, upon the participants' earned salary and bonus, including amounts paid those participants in excess of the applicable FAR 31.205-6(p) limitation or cap for the given year.  (JSUMF ¶ 15).

3.  The specific proposed costs set forth in Northrop Grumman's Incurred Cost Submission included:



a.  ███████ of FY 2012 pension costs incurred under the Northrop Grumman Electronic Systems Executive Pension Plan;

b.  ███████ of FY 2012 pension costs incurred under the CPC Supplemental Executive Retirement Program;

c.  ███████ of FY 2012 pension costs incurred under the Northrop Grumman Master Inactive Nonqualified Pension Plan;

d.  ███████ of FY 2012 pension costs incurred under the Northrop Grumman Supplementary Retirement Income Plan; and

e.  ███████ of FY 2012 pension costs incurred under the Litton Industries, Inc., Restoration Plans 1 and 2.

(JSUMF ¶ 3)

4.  The Northrop Grumman Electronic Systems Executive Pension Plan, the CPC Supplemental Executive Retirement Program, the Northrop Grumman Supplementary Retirement Income Plan, the Litton Industries, Inc., Supplemental Executive Retirement Plan (the relevant component plan to the Master Inactive Nonqualified Pension Plan), and the Litton Industries, Inc., Restoration Plans 1 and 2 (together, the "Pension Plans") are nonqualified defined-benefit pension plans (JSUMF ¶ 4).

5.  The Pension Plans are designed to provide supplemental retirement benefits, paid after retirement, to a select group of Northrop Grumman's executives and other key employees or highly compensated employees whose retirement benefits exceed those

---

[2] FAR 31.205-6, is entitled, Compensation for Personal Services.  FAR 31.205-6(p), sets forth "[l]imitation on allowability of compensation."

permitted under Northrop Grumman's qualified pension plans, to encourage these employees to continue providing services to Northrop Grumman until their retirement" (JSUMF ¶ 5 (citing the following exhibits attached to the parties' JSUMF: Exhibit 1 at NGC-000007 (Section 1.01, Introduction); Exhibit 2 at NGC-000040 (F.01, Purpose); Exhibit 3 at NGC-000145 (Article I, Introduction and Purpose); Exhibit 4 at NGC-000054 (Section 1, Purpose); Exhibit 5 at NGC-000101 (Section 1.1., Purpose); Exhibit 6 at NGC-001945 (Section A.01, Purpose))).[3]

6. For an employee to be eligible to receive supplemental retirement benefits upon retirement, each Pension Plan contains eligibility criteria that requires plan participants to be an employee of the entity, attain a certain age prior to retirement, have satisfied a vesting requirement, and, in certain plans, contribute to qualified plans and/or comply with a non-compete clause (JSUMF ¶ 6 (citing the following exhibits attached to the parties' JSUMF: Exhibit 1 at NGC-000010 (Section 2.18, Maximum Contribution), NGC-000011 (Section 2.24, Retirement Eligible), NGC-000012 to 000014 (Article 3, Qualification for Benefits; Mandatory Retirement), NGC 000020 (Article 8, Conditions to Receipt of Executive Pension Supplement); Exhibit 2 at NGC-000043 (F.03, Eligibility), NGC-000047 (F.08, Individual Arrangements); Exhibit 3 at NGC 000153 (Section 4.1, Eligibility for Retirement Benefit); Exhibit 4 at NGC-000055 (Section 2, Eligibility), NGC 000057 (Section 4, Payment of Benefits), NGC-000067 (Appendix B, Post 2007 Distribution of 409A Amounts); Exhibit 5 at NGC-000107 (Section 4.1, Participation), NGC-000101 to 000102 (Section 3.2, Affected Employee), NGC-0000108 to 000109 (Section 6.1, Normal Retirement Benefit, and Section 6.4, Vesting Schedule); Exhibit 6 at NGC-001945 to 001946 (Section A.03, Eligibility), NGC 001946 to 001947 (Section A.04, Amount of Benefit))).

7. For FY 2012, Northrop Grumman accounted for the costs of the Pension Plans for government contract purposes on a pay-as-you-go basis. Under a pay-as-you-go accounting practice, the plan sponsor, here Northrop Grumman, recognizes the pension cost only when it pays the retirement benefit to retired plan participants or their beneficiaries (JSUMF ¶ 7). FAR 31.001 ("Pay-as-you-go cost method means a method of recognizing pension cost only when benefits are paid to retired employees or their

---

[3] A qualified pension plan is "a pension plan comprising a definite written program communicated to and for the exclusive benefit of employees which meets the criteria deemed essential by the Internal Revenue Service as set forth in the Internal Revenue Code for preferential tax treatment regarding contributions, investments, and distributions." 48 C.F.R. § 9904.412-30(a)(25). A nonqualified pension plan, within the meaning of CAS 413-30(a)(18), is one that "does not qualify for preferential tax deferral under the tax code and implementing regulations by the Internal Revenue Service." *Northrop Grumman Corp.*, ASBCA No. 61775, 20-1 BCA ¶ 37,712 at 183,057.

beneficiaries").  Accordingly, Northrop Grumman's FY 2012 Pension Plans' costs equal the actual annuity and amortization of lump sum and certain installment payments that Northrop Grumman paid to retired plan participants in FY 2012 (JSUMF ¶ 7).

8.  Each Pension Plan exists in written plan document form that Northrop Grumman may modify on a prospective basis (JSUMF ¶ 8).  "Each Pension Plan sets forth a Retirement Benefit Formula used to calculate the amount of the pension benefit that an eligible employee is to receive upon retirement (JSUMF ¶ 9).

9.  At a summary level, the Retirement Benefit Formula for the Northrop Grumman Electronic Systems Executive Pension Plan, the Northrop Grumman Corporate Policy Council Supplemental Executive Retirement Program, the Northrop Grumman Space & Mission Systems Corporation TRW Supplementary Retirement Income Plan, and the Litton Industries, Inc., Supplemental Executive Retirement Plan, is as follows:

> a.  Multiplying three figures:
>
> i. a fixed percentage (as specified in the relevant pension plan);
>
> ii. the participant's Final Average Earnings; and
>
> iii. the participant's number of years of service; and then
>
> b.  Subtracting from the amount in (a) identified qualified and other nonqualified plan benefits received by the eligible retiree and/or limiting the amount in (a) based on identified qualified and other non-qualified plan benefits (varies by Pension Plan).

(JSUMF ¶ 10 (citing the following exhibits attached to the parties' JSUMF: Exhibit 1 at NGC-000014 to 000016 (Article 4, Calculation of Executive Pension Supplement and Article 6, Executive Pension Base); Exhibit 2 at NGC-000043 to 000044 (F.04, Benefit Amount); Exhibit 3 at NGC-000146 to 000147 (Section 2.4, Average Compensation); NGC-000150 to 000151 (Section 2.19, Offset Amount); NGC-000154 (Section 5.1, Retirement Benefit Formula); Exhibit 4 at NGC-000055 (Section 3, Benefits))).

10.  The Final Average Earnings ("FAE"), is usually an average (of three or five years, depending upon the plan) of the highest years of the plan participant's actual compensation (bonus plus salary, but not long-term incentive compensation) during the plan participant's working years.  The FAE does not exclude compensation that was in

excess of the FAR 31.205-6(p) compensation limitation in effect at the time the plan participant earned the compensation (bonus and salary).  (JSUMF ¶ 11 (citing the following exhibits attached to the parties' JSUMF:  Exhibit 1 at NGC-000014 to 000016 (Article 4, Calculation of Executive Pension Supplement and Article 6, Executive Pension Base); Exhibit 2 at NGC-000043 to 000044 (F.04, Benefit Amount); Exhibit 3 at NGC-000146 to 000147 (Section 2.4, Average Compensation), NGC-000150 to 000151 (Section 2.19, Offset Amount), NGC-000154 (Section 5.1, Retirement Benefit Formula); Exhibit 4 at NGC-000055 (Section 3, Benefits))).

11.  The Retirement Benefit Formula for the fifth plan, the Litton Industries, Inc., Restoration Plan, does not utilize an FAE factor, but includes a factor based upon the plan participant's annual compensation (bonus plus salary, but not long-term incentive compensation).  The compensation factor included in the Retirement Benefit Formula for the Litton Industries, Inc., Restoration Plan, does not exclude compensation that was in excess of the FAR 31.205-6(p) compensation limitation in effect at the time the plan participant earned the compensation (bonus and salary).  (JSUMF ¶ 12 (citing the following exhibits attached to the parties' JSUMF:  Exhibit 5 at NGC-000102 (Section 3.4, Annual Benefit); NGC-000102 (Section 3.6, Annual Compensation); NGC-000107 (Section 3.28, Retirement Account Restricted Amount); NGC-000108 (Section 6.1, Normal Retirement Benefit); NGC-000109 (Section 6.2, Early Retirement Benefit); Exhibit 6 at NGC-001932 (Section 2.01, In General), NGC-001946 to 001947 (Section A.04, Amount of Benefit))).

12.  The Retirement Benefit Formula in the Litton Industries, Inc., Restoration Plan, includes the following factors:

    a.  a fixed percentage;

    b.  the participant's annual compensation (bonus plus salary, but not long-term incentive compensation);

    c.  the amount that the participant elected to contribute to the participant's Litton Financial Security and Savings Program account; and

    d.  a vesting percentage.

(JSUMF ¶ 13 (citing the following exhibits attached to the parties' JSUMF: Exhibit 5 at NGC-000108 (Section 6.1, Normal Retirement Benefit), NGC 000109 (Section 6.2, Early Retirement Benefit), NGC-000109 (Section 6.3, Disability Retirement Benefit); Exhibit 6 at NGC-001946 to 001947 (Section A.04, Amount of Benefit)))

13.  The Retirement Benefit Formula in the Litton Industries, Inc., Restoration Plan, is applied to each year of the participant's service after meeting eligibility requirements to calculate the pension benefit earned in that year.  The amount of retirement benefits paid to a participant upon retirement equals the total amount of benefits earned over the relevant years as calculated under the Retirement Benefit Formula.  (JSUMF ¶ 14).

14.  Certain Pension Plans participants who received a pension benefit in FY 2012 earned compensation in excess of the applicable FAR 31.205-6(p) limitation during their working years.  Northrop Grumman included the earned salary and bonus, including the amount of such salary and bonus in excess of the applicable FAR 31.205-6(p) limitation in a given year, in the compensation factor of the Retirement Benefit Formulas.  (JSUMF ¶ 15).

15.  On September 29, 2017, the Defense Contract Audit Agency (DCAA) issued an audit report questioning, among other costs:

> ████████████████████████████ of the proposed
> 2012, 2013, and 2014 nonqualified defined benefit pension
> plan costs, respectively, which were directly associated with
> expressly unallowable costs under FAR 31.205-6(p).  Directly
> associated costs are unallowable under FAR 31.201-6(a).
> Pension benefits are based on, and therefore directly
> associated with, the employee's salary while working.  The
> questioned costs represent the portion of the proposed costs
> for annuity payments and amortized lump sum payments of
> retired executives which were based on unallowable salary in
> excess of the FAR 31.205-6(p) compensation cap.

(R4, tab 4 at G-000118)

16.  On June 7, 2019, the DCMA CACO issued a COFD disallowing certain of Northrop Grumman's pension costs contained in its 2012 Incurred Cost Submission (JSUMF ¶¶ 16-17; R4, tab 6).  The COFD did not assess any penalties based upon its disallowance of Northrop Grumman's pension costs (R4, tab 6).

17.  Regarding the Northrop Grumman pension costs, the COFD provided:

> **Note 1 – Pension** ████████ is considered unallowable.
> DCAA review disclosed that the compensation of many
> retirees participating in nonqualified defined benefit pension
> plans was limited by the FAR 31.205-6(p) compensation cap.

7

> In accordance with the pension plan documents for each of the nonqualified plans, benefits are based on "Final Average Salary."  Since the amount of the pension benefits is based on employee salaries, pension payments are directly associated with employee salaries. FAR 31.001 defines a directly associated cost as "any cost which is generated solely as a result of the incurrence of another cost, and which would not have been incurred had the other cost not been incurred."  The portion of the payment directly associated with expressly unallowable portions of employee salaries is unallowable per FAR 31.201-6(a) which states "[w]hen an unallowable cost is incurred, its directly associated costs are also unallowable."  We questioned the portion of the pension benefits directly associated with unallowable compensation.  These costs would not have been incurred but for the payment of salaries in excess of FAR 31.205-6(p) compensation caps.

(R4, tab 6 at G-000185)

18.  The COFD disallowed ▮▮▮▮▮▮▮ of Northrop Grumman's pension costs paid pursuant to the Pension Plans (the "Pension Costs"), specifically disallowing:



    a.   ▮▮▮▮▮▮ of FY 2012 pension costs incurred under the Northrop Grumman Electronic Systems Executive Pension Plan;

    b.   ▮▮▮▮▮▮▮ of FY 2012 pension costs incurred under the Northrop Grumman Corporate Policy Council Supplemental Executive Retirement Program;

    c.   ▮▮▮▮▮ of FY 2012 pension costs incurred under the Master Nonqualified Pension Plan and specifically the Northrop Grumman Corporation Litton Industries, Inc., Supplemental Executive Retirement Plan component plan;

    d.   ▮▮▮▮▮▮▮ of FY 2012 pension costs incurred under the Northrop Grumman Space & Mission Systems Corporation TRW Supplementary Retirement Income Plan; and

    e.   ▮▮▮▮▮ of FY 2012 pension costs incurred under the Litton Industries, Inc., Restoration Plan.

(JSUMF ¶ 17)

19.  By email dated September 3, 2019, appellant filed its notice of appeal.

DECISION

I.  Standard of Review

"Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  *First Commerce Corp. v. United States*, 335 F.3d 1373, 1379 (Fed. Cir. 2003); FED. R. CIV. P. 56(a). "The moving party bears the burden of establishing the absence of any genuine issue of material fact and all significant doubt over factual issues must be resolved in the opposing party's favor."  *Bubble Room, Inc. v. United States*, 159 F.3d 553, 561 (Fed. Cir. 1998).  A party challenging a motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank or Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).  It does not matter that the parties have cross-moved for summary judgment, both claiming that there exists no material issue of fact.  *Osborne Constr. Co.*, ASBCA No. 55030, 09-1 BCA ¶ 34,083 at 168,513 ("[e]ach cross-motion is evaluated separately on its merits, and all reasonable inferences are drawn in favor of the defending party; the Board is not bound to 'grant judgment as a matter of law for one side or the other'" (quoting *Mingus Constructors*, 812 F.2d 1387, 1391 (Fed. Cir. 1987))).

II.  Burden of Proof

As we held in our previous decision, "[t]his appeal involves a unilateral rate determination, which is considered a government claim."  *Northrop Grumman I* at 184,170 (citing *Parsons Gov't Servs., Inc.*, ASBCA No. 62113, 20-1 BCA ¶ 37,586 at 182,508).  "The government has the burden of proof in establishing that a cost is unallowable by operation of a specific contract provision or regulation."  *Kellogg Brown & Root Servs., Inc.*, ASBCA No. 58081, 17-1 BCA ¶ 36,595 at 178,240.  "To be allowable, a cost must (1) be reasonable, (2) be allocable, (3) comply with Cost Accounting Standards (CAS) or generally-accepted accounting principles and practices, (4) comply with contract terms, and (5) comply with any limitations set forth in FAR subpart 31.2."  *Northrop Grumman I* at 184,173 (citing 48 C.F.R. § 31.201-2(a)).[4]

---

[4] "[A] cost is allowable if it meets all five of the factors specified in FAR 31.201-2(a), including allocability, and it is unallowable if it fails to meet any one of them." ALLOCABILITY AND ALLOWABILITY OF COSTS:  VIVE LA DIFFÉRENCE, 16 NASH & CIBINIC REP. ¶ 29 (Jun. 2002).

"A cost is reasonable if, in its nature and amount, it does not exceed that which would be incurred by a prudent person in the conduct of competitive business."
48 C.F.R. § 31.201-3(a).  However, no presumption of reasonableness attaches "to the incurrence of costs by a contractor." *Id*.  Where "an initial review of the facts results in a challenge of a specific cost by the contracting officer or the contracting officer's representative, the burden of proof shall be upon the contractor to establish that such cost is reasonable." *Id*.  The Court of Appeals for the Federal Circuit has interpreted FAR 31.201-3 as affording "the reviewing officer or court considerable flexibility in assessing the reasonableness of costs." *Kellogg, Brown & Root Servs., Inc. v. United States*, 728 F.3d 1348, 1359 (Fed. Cir. 2013).

As stated in our previous decision, we are called upon to determine "whether it was improper for appellant to include compensation in excess of FAR 31.205-6(p) as a factor in appellant's methodology to determine pension costs, either because it violated FAR 31.201-6(a) as a directly-associated cost, or because it violated FAR 31.201-3(b) as contrary to [Northrop Grumman]'s responsibilities to the government and the public at large . . . ." *Northrop Grumman I* at 184,172.  "Both determinations turn on the propriety of including compensation in excess of FAR 31.205-6(p) as a factor in appellant's pension costs methodology." *Id.*

### III.  Contentions of the Parties

The government argues that "[a]lthough the Pension Costs themselves may not be subject to the FAR 31.205-6(p) compensation cap, the cap nonetheless applies to the underlying bonus and salary utilized in the Retirement Benefit Formulas' compensation factor" (gov't cross-mot. at 3).  The government notes that "FAR 31.205-6(p)(2)(ii) expressly disallowed senior executive compensation in excess of the benchmark compensation amount determined applicable for the contractor fiscal year by the Administrator of the Office of Federal Procurement Policy (OFPP)" (gov't cross-mot. at 1-2).  According to the government, the pension costs here are *unallowable* as directly associated costs of unallowable compensation pursuant to FAR 31.201-6 (gov't cross-mot. at 12) and are *unreasonable* because they are derived from unallowable compensation (gov't cross-mot. at 7).  The linchpin connecting both arguments is the proposition that the Retirement Benefit Formulas utilized to determine pension costs include as one factor a plan participant's FAE computed utilizing compensation that exceeded the FAR 31.205-6(p) limitation in effect at the time the plan participant earned the compensation (SOF ¶¶ 10-11).

The government also argues that the plain language of FAR 31.205-6(j) does not preclude disallowance of the pension costs, noting that FAR 31.205-6(j)(5) provides pay-as-you-go pension costs "are allowable to the extent they *are not otherwise unallowable,*" and, therefore, are still "subject to other Cost Principles" (gov't cross-mot. at 29-30

(emphasis added)).  Moreover, the government does not allege "that the challenged pension costs themselves are unallowable because [Northrop Grumman] failed to comply with FAR 31.205-6(j)," rather the government argues that "the challenged pension costs are unallowable because of their relationship to expressly unallowable compensation" (gov't cross-mot. at 30).

Appellant argues that the pension costs here are allowable pursuant to FAR 31.205-6(j)(1) as they meet both CAS 412 and 413, which are referenced in that FAR provision, and that "the cost limitations and exclusions set forth in paragraph (j)(1)(i) and in paragraphs (j)(2) through (j)(6)" do not apply to the pension costs at issue here (app. mot. at 8 (quoting FAR 31.205-6(j)(1))).  According to appellant, the compensation cap set forth in FAR 31.205-6(p) has no application because (1) it does not expressly state that it applies to defined benefit pension plans (app. mot. at 1-2), and (2) FAR 31.205-6(p)(2)(ii) states the cap represents "the 'sole statutory limitation' on allowable senior executive . . . compensation" (app. mot. at 12 (quoting FAR 31.205-6(p))).  Appellant also argues that the pension costs are not directly associated costs under FAR 31.201-6(a) because the pension costs were not "generated solely" as a result of unallowable compensation (salary and bonus) and the government cannot establish that the pension costs would not have been incurred but for the incurrence of the participant's compensation (app. mot. at 15, 21).

IV.  Compensation for Personal Services

"Compensation for personal services is typically one of the largest components of cost incurred under a Government contract."  1 KAREN L. MANOS, GOVERNMENT CONTRACT COSTS AND PRICING § 13:2 (2d ed. 2009).  Subject to certain criteria and requirements, compensation for personal services, including pension costs, is an allowable cost.  FAR 31.205-6(a) sets forth general criteria for allowability, and states that additional requirements are contained in other parts of the cost principle.  FAR 31.205-6(j) sets forth criteria for determining allowability of pension costs, stating that "[p]ension costs are allowable subject to the referenced standards and the cost limitations and exclusions set forth in paragraph (j)(1)(i) and in paragraphs (j)(2) through (j)(6) of this subsection."

Incorporated by reference into Northrop Grumman's contract is FAR 52.216-7, which provides that the government will make payments to a contractor in amounts determined allowable in accordance with FAR 31.2 (SOF ¶ 1).[5]  In cost-reimbursement contracts, the government agrees to pay the contractor's allowable direct and indirect costs.  *Sec'y of Def. v. Raytheon Co.*, 56 F.4th 1337, 1338 (Fed. Cir. 2023) (citing 48

---

[5] FAR subpart 31.2 includes many of the FAR provisions at issue in this appeal including FAR 31.201-2, FAR 31.201-3, FAR 31.201-6, FAR 31.203, and FAR 31.205-6.

C.F.R. § 52.216-7); *Falmouth Sci., Inc.*, ASBCA No. 60776, 19-1 BCA ¶ 37,389 at 181,765. This appeal concerns indirect costs (specifically Northrop Grumman's pension costs) which "are overhead costs that the company incurs during the time of contract performance that cannot be allocated to a single 'cost objective.'" *Tech. Sys., Inc.*, ASBCA No. 59577, 17-1 BCA ¶ 36,631 at 178,378 (citing FAR 31.203(b)).[6] Indirect costs "are allocated to the contract on a pro rata basis, based upon the direct costs incurred during the base time period, typically the contractor's fiscal year." *Id.* at 178,378 (citing FAR 31.203(b)-(g)).

During contract performance, the contractor invoices an estimated amount for indirect costs and typically is paid that amount, assuming the contracting officer is satisfied that the estimates appear appropriate and that certain exceptions do not apply. *Falmouth Sci.*, 19-1 BCA ¶ 37,389 at 181,765. The contractor submits yearly "indirect-cost rate proposals, which provide a schedule of all claimed expenses," and "must certify that its incurred-cost submissions do not include any unallowable costs." *Raytheon*, 56 F.4th at 1339. The government and the contractor then attempt to reach an agreement on final indirect cost rates. FAR 52.216-7(d), ALLOWABLE COST AND PAYMENT (AUG 2018). The parties' inability to agree upon final annual indirect cost rates constitutes a dispute within the meaning of the Disputes clause, and either party may bring a claim for payment of a sum certain. *Edward Hayes, as Liquidator of Base Operation Services GMBH*, ASBCA No. 59829, 16-1 BCA ¶ 36,412 at 177,541 (citing FAR 52.216-7(d)(4)).

V. Appellant's Challenged Pension Costs Are Derived from Compensation Paid to Plan Participants in Excess of the FAR 31.205-6(p) Cap

FAR 31.205-6(p) limits the allowability of certain pension costs in excess of what is known colloquially as "the executive compensation cap." *Exelis, Inc.*, ASBCA No. 58996, 17-1 BCA ¶ 36,708 at 178,743; *BAE Systems Information and Electronic Systems Integration, Inc.*, ASBCA No. 44832, 01-2 BCA ¶ 31,495 at 155,537-38 (pursuant to FAR 31.205-6(p) "senior executive personal service compensation is allowable to the extent it does not exceed OFPP benchmark compensation"). It is undisputed that appellant incurred higher pension costs because it utilized as a factor in its pension plan formula compensation that did not exclude amounts paid in excess of the cap. Appellant admits as much but argues this does not matter because pension costs are allowable costs, stating, "FAR § 31.205-6(p) confirms that the cost of defined benefit pension plans is expressly allowable under FAR § 31.205-6(j) and bars the application of

---

[6] A cost objective is "a function, organizational subdivision, contract, or other work unit for which cost data are desired and for which provision is made to accumulate and measure the cost of processes, products, jobs, capitalized projects, etc." FAR 31.001.

FAR § 31.201-6(a) to disallow such costs" (app. mot. at 2). In appellant's view, the fact that those pension costs increased because appellant did not deduct compensation amounts in excess of the cap, does not render that increased portion of the pension costs unallowable. The government argues that "[b]ecause the challenged pension costs are derived from compensation paid to plan participants during their working years in excess of the applicable FAR 31.205-6(p) cap, they are unallowable per FAR 31.201-6(a) as directly associated costs of unallowable compensation" (gov't cross-mot. at 12).

FAR 31.201-6(a) provides that "[w]hen an unallowable cost is incurred, its directly associated costs are also unallowable," and defines directly associated cost as "any cost that is generated solely as a result of incurring another cost, and that would not have been incurred had the other cost not been incurred." Northrop Grumman argues (as it must to prevail) that the increase in pension costs paid its employees as a result of the portion of their salaries above the statutory cap is not, in fact, a directly associated cost of an unallowable cost. This is an unpersuasive argument.

A. Appellant's Challenged Pension Costs Were Generated Solely as a Result of Unallowable Compensation

Northrop Grumman argues that its challenged pension costs do not meet the definition of directly associated costs set forth in FAR 31.201-6(a) because its pension costs were not generated solely as a result of incurring another cost (app. mot. at 15). The government responds, stating "[d]irectly associated costs are 'not unallowable by nature but merely by association' with expressly unallowable costs" (gov't cross-mot. at 12 (citing 38 Fed. Reg. 24,195, 24,196 (Sept. 6, 1973)). According to the government, "[b]ecause the *challenged pension costs* are derived from compensation paid to plan participants during their working years in excess of the applicable FAR 31.205-6(p) cap, they are unallowable per FAR 31.201-6(a) as directly associated costs of unallowable compensation" (*id.*) (emphasis added).

In its brief, appellant refers to its Pension Plans as "top hat plans" (app. mot. at 5). *See Goldstein v. Johnson & Johnson*, 251 F.3d 433, 436 (3rd Cir. 2001) ("Top hat plans are unfunded, they do not vest, and they are not required to name fiduciaries") (citation omitted). Appellant argues that it needs to employ and retain certain high-level employees, so it agrees to pay a top hat pension plan and that its pension plans "would not exist absent the existence of Defined Benefit Pension Plans" (app. mot. at 18). According to appellant, the "need to retain eligible employees and the resulting existence of the pension plans plainly 'generated' Northrop Grumman's obligation to pay pension benefits" (*id.*). Northrop Grumman argues, therefore, that salary clearly exceeding the compensation cap is properly included as a factor in its pension plan formula because the pension plan generates Northrop Grumman's obligation to compensate its employees (app. resp. at 19-20).

13

This argument is not in any way persuasive. Northrop Grumman drafted its pension plan such that a portion of it (the portion the government seeks to disallow) is paid based upon executive salary that exceeds the statutory cap. To put it another way, if Northrop Grumman were not paying a salary above the statutory cap, it would not have paid the challenged portions of the pensions at issue. To discuss Northrup Grumman's motivations or to blame "the pension plan" independent of Northrop Grumman's creation of the plan is to engage in misdirection.

As appellant must admit, the obligation to pay a pension is generated by appellant's employment of individuals who perform work for the company, appellant's desire to retain those employees (some of whom are paid at levels exceeding the compensation cap), and appellant's promise to pay a pension upon retirement to certain of its employees (app. mot. at 18).[7] Appellant's Pension Plans are the vehicle by which appellant determines the amount of pension it already is obligated to pay its plan participants, based upon appellant's former employment of those individuals; they are not the genesis of appellant's payment obligation.[8]

In support of its argument, appellant advances a literal definition of the term "sole," stating that a directly associated cost must be one that "is 'generated solely as a result of incurring another cost'" (app. mot. at 16). Appellant cites as support a dictionary definition, focusing upon the word "sole" as being singular (app. mot. at 17). However, even the definition of "sole" offered by appellant (Webster's Seventh New Collegiate Dictionary (1971)) recognizes that sole can encompass more than simply a singular item, stating: "belonging exclusively or otherwise limited to one usu[ally] specified individual, *unit, or group*") (*id.*) (emphasis added). Moreover, the plain language of the cited FAR provision references directly associated costs in the plural: "[w]hen an unallowable cost is incurred, *its directly associated costs* are also unallowable." FAR 31.201-6(a), ACCOUNTING FOR UNALLOWABLE COSTS (emphasis added).

---

[7] Northrop Grumman argues, without supporting citation, that "costs incurred in different accounting periods are too attenuated to be directly associated" (app. mot. at 24). However, appellant readily admits that it included compensation above the cap in its Retirement Benefit Formula and does not suggest anywhere in its briefing that it lacks the information necessary to determine the amount of compensation over the cap that was included in its Retirement Benefit Formula for the select group of plan participants.

[8] Appellant states in its reply brief its Retirement Benefit Formulas "are only the vehicles, among any number of vehicles, that could have been used . . . for defining the amount to be paid (app. resp. at 24).

Northrop Grumman argues that its nonqualified defined benefit pension plans are not "generated solely" by the pension participant's salary, because the plan's "eligibility criteria, and various other factors used to calculate pension benefits each generate the Challenged Pension Costs and Northrop Grumman's obligation to pay the same" (app. mot. 2).  According to appellant its pension costs "would not exist unless an employee satisfied the eligibility criteria in the relevant Defined Benefit Pension Plans prior to retirement," and to determine the amount of the pension benefits, Northrop Grumman utilizes a formula that contains various factors, one of which considers compensation paid over the cap (app. mot. at 18-19).

The government responds, stating "[a]s a practical matter, every cost is incurred as a result of multiple factors," and that "[f]ew – if any - costs are incurred 'solely'" as a result of another cost in the literal sense that nothing else affected their occurrence" (gov't cross-mot. at 16).  We agree.  Indeed, as noted by the government, "compensation is the true driver resulting in these pension costs among a very small number of factors in the Retirement Benefit Formulas" (*id.*).  Had appellant not included such costs in its Retirement Benefits Formula, it would have negated any issue regarding the generation of directly associated costs resulting from unallowable costs.  We find that the *increased* (challenged) pension costs were generated solely as the result of appellant paying compensation costs in excess of the cap, and, thereby, appellant's cost of funding that portion of its pension benefit was incurred as a result of unallowable compensation over the cap.  Appellant's increased pension costs would not have been incurred had compensation costs in excess of the cap not been incurred or included.  Our holding is limited to that portion of the pension costs derived from salary and bonus amounts in excess of the FAR 31.205-6(p) compensation cap.

B.  Appellant's Challenged Pension Costs Would Not Have Been Incurred But For the Incurrence and Inclusion of Salary and Bonus Costs Exceeding the FAR 31-205-6(p) Cap

As noted above, FAR 31.201-6(a) defines directly associated cost as a cost "that would not have been incurred had the other cost not been incurred."  The government argues that appellant would not have incurred the challenged pension costs but for its inclusion in its Retirement Benefit Formulas an amount over the FAR 31.20-6(p) cap (gov't reply at 22-23).  Northrop Grumman argues that it incurs the cost of its defined benefit pension plans "to provide retirement benefits to certain key employees of Northrop Grumman to encourage them to continue providing services to Northrop Grumman until their retirement and not because of its incurrence of salary and bonus costs" (app. mot. at 21).  Appellant argues also that "the Challenged Pension Costs lack the direct association to unallowable salary and bonus costs necessary for the Challenged Pension Costs to meet the 'but for' requirement underlying the second part of the definition of a directly associated cost" (*id.*).

15

The government argues that at the time appellant drafted its top hat pension plans and entered into agreements with those wearing the top hats, "it did not 'incur' any costs," noting that appellant admits as much, acknowledging that "it 'incurred' the Pension Costs when it paid the benefits" (gov't reply at 23 (citing app. resp. at 16-17 n.12) ("in the year the pension benefit payment occurred and the pension cost was incurred")).  The government also notes that for pay-as-you-go pension plans CAS 412-30(a)(19) requires "a method of 'recognizing pension cost only when benefits are paid to retired employees or their beneficiaries'" (*id.*).

Again, Northrop Grumman's argument as to why it created Pension Plans is not a proper basis upon which to conclude that payment of costs in excess of the compensation cap are allowable.  At bottom, it is the amount of the pension cost - determined in part by compensation that exceeds the cap - that would not have been incurred but for incurrence of the participant's compensation exceeding the cap.  In that manner, the challenged pension costs were generated by Northrop Grumman's inclusion in its pension formula of amounts that exceeded the cap.  As the government notes, it was Northrop Grumman that created the Retirement Benefit Formula for determining pension benefits (gov't cross-mot. at 16).  Northrop Grumman was free to structure it in such a way that its formula did not include amounts above the applicable compensation cap.  The fact that Northrop Grumman chose to include costs above the cap does not justify its now seeking reimbursement from the government for pension costs that were determined based upon the excess costs.   Clearly, the additional pension cost for which appellant requests reimbursement would not have been incurred had appellant not paid its pensioners compensation that exceeded the cap.

Citing FAR 31.201-6(e)(2), Northrop Grumman argues that salary costs can never be "directly associated costs" and therefore, all compensation costs likewise cannot properly be considered directly associated costs (app. mot. at 23).  The government responds stating that appellant's argument, even if somehow true, is of no moment as this appeal concerns pension costs, not salary costs (gov't cross-mot. at 18-19).[9]  The government correctly notes that this Board previously has recognized that other types of compensation could be unallowable as directly associated costs (gov't reply at 26-27) (citing *Raytheon Co.*, ASBCA No. 57576 *et. al.*, 15-1 BCA ¶ 36,043 at 170,051-52

---

[9] Indeed, the government notes the inconsistency in appellant's position, wherein appellant also argues that "salary and bonus costs are completely different from pension costs because they have distinct purposes and are therefore not related," and that "cost for its Defined Benefit Pension Plans does not have the same primary purpose as either the salary and bonus costs . . . cost allowability focuses on the primary purpose" (gov't cross-mot. at 19 (citing app. mot. at 19-20 n.17, 24 n.20)).

(denying summary judgment because of the existence of disputed material facts but noting that bonus and incentive payments (both types of compensation excluded from the definition of salary and fringe benefits) may be unallowable pursuant to FAR 31.201-(6) as directly associated costs to an unallowable salary cost)).

Northrop Grumman states that the fact it "chose to measure the amount of the benefits to be paid using a Retirement Benefit Formula that included many factors, including salary and bonuses paid, has no impact on the incurrence of that pension cost. In other words, the Retirement Benefit Formulas do not require Northrop Grumman to 'incur' its Pension Plan costs, but rather are only the vehicles" (app. resp. at 24). Appellant's argument misses the mark. It is Northrop Grumman's inclusion in the Retirement Benefit Formulas of salary over the compensation cap that causes appellant to incur the challenged pension plan costs. There is no dispute that pension costs are allowable. It is that portion of Northrop Grumman's pension costs based on compensation in excess of the FAR 31.205-6(p) cap that are at issue here and that are unallowable.

Northrop Grumman argues that it could have structured its pension payments differently, so as not to include in its salary factor any amounts expended above the cap. Instead, it could have increased the percentage amount against which the lower salary amount would be multiplied, to arrive at a similar pension cost. (App. mot. at 19-20). The government responds, stating that appellant's "hypothetical formulas are not before the Board in this Appeal because the Government's claim relates to the specific Retirement Benefit Formulas NG actually utilized" (gov't reply at 6). We agree. Appellant's alternative formulas are not before us and, as such, have no bearing upon our decision here. *Lockheed Corp.*, ASBCA No. 22451, 80-2 BCA ¶ 14,509 at 71,520 ("The hypothetical situations discussed by respondent are not before the Board. If it ever does occur, it would have to be dealt with at that time"). We decline appellant's offer to speculate as to whether appellant could have structured or utilized a different Retirement Benefit Formula (with which the government may or may have not agreed) under the pension plans currently in place that would not have resulted in a determination that certain of appellant's pension costs are unallowable. [10]

VI. <u>FAR 31.205-6(p) Does not Exempt Northrop Grumman's Defined Benefit Plan from Limitations Based Upon the Compensation Cap</u>

---

[10] The government states that it "has not analyzed whether those hypothetical formulas are otherwise objectionable and whether they would generate unallowable costs" (gov't reply at 37), and hypothesizes that "when analyzed, the Government could find that such plans are otherwise unreasonable or unallowable under other cost principles" (gov't reply at 2). We need not tread this path, as where it might lead ultimately has no bearing upon whether the pension costs incurred by appellant here - utilizing the specific formulas at issue here - are unallowable.

As noted above, FAR 31.205-6(p) limits the allowability of certain pension costs in excess of the executive compensation cap.  FAR 31.205-6(p) defines compensation (for purposes of paragraph p) as "the total amount of wages, salary, bonuses, deferred compensation (see paragraph (k) of this subsection),[11] and employer contributions to defined contribution pension plans (see paragraphs (j)(4)[12] and (q) of this subsection),[13] for the fiscal year, whether paid, earned, or otherwise accruing, as recorded in the contractor's cost accounting records for the fiscal year."  FAR 31.205-6(p)(1)(i) (explanatory footnotes added).  FAR 31.205-6(p) makes no mention, whatsoever, of defined benefit plans, like Northrop Grumman's.  *Id*.

A.  Distinction Between Defined Benefit Pension Plans and Defined Contribution Pension Plans

FAR 31.205-6(j) recognizes that "[p]ension plans are normally segregated into two types of plans: defined-benefit and defined-contribution pension plans."  This appeal concerns defined benefit, pay-as-you-go plans (SOF ¶ 2).  As noted above, appellant refers to its Pension Plans as "top hat plans" (app. mot. at 5).  Appellant notes that these plans are subject to the civil enforcement provisions of the Employee Retirement Income Security Act of 1974 (ERISA), "[but] not the participation and vesting, funding, or fiduciary requirements" (app. mot. at 5 (citing 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1))).[14]  Appellant argues that the cap set forth in FAR 31.205-6(p) does not apply here because that FAR provision references defined contribution plans, but not defined benefit plans (*see* app. mot. at 1-2).  To understand why this argument ultimately does not

---

[11] FAR 31.205-6(k) sets forth limitations on "[d]eferred compensation other than pensions."

[12] FAR 31.205-6(j)(4) states "Defined-contribution pension plans.  In addition to defined-contribution pension plans, this paragraph also covers profit sharing, savings plans, and other such plans, provided the plans fall within the definition of a pension plan at 31.001."

[13] FAR 31.205-6(q) concerns employee stock ownership plans.

[14] ERISA governs non-governmental employee benefit plans, setting minimum standards for participation, vesting, benefit accrual, and funding, and was enacted, in part, to address "the soundness and stability of plans with respect to adequate funds," and "to meet minimum standards of funding."  29 U.S.C. §§ 1001(a), 1001(c).  Section 1051 of the Act recognizes that certain employee benefit plans are not subject to application of ERISA, including plans which are "unfunded and [ ] maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees."  29 U.S.C. § 1051(2).

favor appellant, it is important to consider several relevant distinctions between the two types of pension plans.

## 1. Defined Benefit Plan

"A defined benefit plan, 'as its name implies, is one where the employee, upon retirement, is entitled to a fixed periodic payment.'" *Beck v. PACE Intern. Union*, 551 U.S. 96, 98 (2007) (quoting *Commissioner v. Keystone Consol. Indus., Inc*., 508 U.S. 152, 154 (1993)).  "The size of that payment usually depends upon prior salary and years of service." *Keystone*, 508 U.S. at 154.  A defined benefit plan "consists of a general pool of assets rather than individual dedicated accounts." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999).  Such a plan "obligates an employer to spend whatever is necessary to continue to provide its employees with an agreed-upon level of benefit," and ensure "that employees will continue to receive the same level of benefit . . . even as costs rise." *Lear Siegler Servs., Inc., v. Rumsfeld*, 457 F.3d 1262, 1265 (Fed. Cir. 2006).  Employers "generally shoulder[] the investment risk," and "must make up for any deficits." *Beck*, 551 U.S. at 98 (citation omitted).

As noted by the Federal Circuit:

> Defined-benefit plans guarantee fixed payments to retired employees, leaving the company responsible for ensuring that sufficient funds will be available.  Companies therefore must make assumptions regarding, inter alia, the amount of money they expect to pay in the future, and the expected performance of the investments held by their pension plans.  Based on these assumptions, companies determine how much money to invest in the plan in a given period so that future liabilities will be met.

*Gates v. Raytheon Co*., 584 F.3d 1062, 1064 (Fed. Cir. 2009).

## 2. Defined Contribution Plan

In contrast, a defined contribution plan "provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account." *Hughes Aircraft*, 525 U.S. at 439 (quoting ERISA § 3(34); 29 U.S.C. § 1002(34)).  A defined-benefit pension plan is one in which "the amount to be paid to pensioners or the basis for determining those benefits [] is determined in advance." *Northrop Grumman Corp*., ASBCA No. 61775, 20-1 BCA ¶ 37,712 at 183,057 (quoting CAS 412-30(a)(10)); 48 C.F.R. § 9904.412-30(a)(10).  Under a defined contribution pension plan, "the employer contributes a percentage of payroll or

profits to individual employee accounts." *Keystone*, 508 U.S. at 154 (citing 29 U.S.C. §§ 1002(34) and (35)). Although contributions under a defined contribution plan are made by the employer, participants as employees have the option of contributing additional amounts, typically through payroll deductions. *See generally George v. United States*, 90 F.3d 473, 477 (Fed. Cir. 1996) (discussing employee contributions under a defined contribution plan)).

Upon retirement, the employee under a defined contribution plan is entitled to funds in that employee's account. *Keystone*, 508 U.S. at 154 (citing 29 U.S.C. §§ 1002(34) and (35)). Accordingly, unlike a defined benefit plan, under a defined contribution plan, the employer contributes to the individual employee's pension plan while employed. The employer does not utilize a retirement benefit formula to determine pension amounts. Nor does the employer utilize a compensation factor as part of participants' earned salary and bonus that includes amounts in excess of the applicable FAR 31.205-6(p) limitation in a given year, because "the employer's contribution is fixed and the employee receives whatever level of benefits the amount contributed on his behalf will provide.'" *Hughes Aircraft*, 525 U.S. at 439 (quoting *Nachman Corp. v. Pension Benefit Guaranty Corporation*, 446 U.S. 359, 364, n.5 (1980)).

B. The Fact that Defined Benefit Plans are Not Identified in FAR 31.205-6(p) is Not Itself Determinative of Whether the Cap Applies to Appellant's Defined Benefit Plans

Appellant argues that the limitations set forth in FAR 31.205-6(p) do not apply here because that provision references defined contribution pension plans but makes no reference to defined benefit plans (*see* app. mot. at 1-2). According to appellant, the FAR 31.205-6(p)(2)(ii) cap represents "the 'sole statutory limitation' on allowable senior executive . . . compensation" (app. mot. at 12 (quoting FAR 31.205-6(p)(2)(ii))). The government responds, stating that "[u]nder Northrop Grumman's line of reasoning, the Government would be effectively precluded from ever questioning contributions to defined-benefit pension plans under another cost principle other than FAR 31.205-6(p) or (j)" (gov't cross-mot. at 31).

Northrop Grumman's argument ignores a key distinction between defined contribution plans and defined benefit plans discussed above, i.e., defined contribution plans involve contributions by the employer to a specific pension plan held by individual employees, while defined benefit plans do not. Indeed, FAR 31.205-6(p) clarifies that the definition of compensation, for purposes of defined contribution plans, applies only to "employer contributions to defined contribution" plans. It is therefore not surprising that defined benefit plans, unlike employer contributions to defined contribution plans, are not specifically called out in the definition of compensation included in FAR 31.205-(p)(1)(i).

In contrast to a defined contribution plan, in which the contribution is fixed, and the employee receives the amount contributed on the employee's behalf, with a defined benefit plan the amount of salary a plan participant received while employed (along with years of service) is utilized as a factor only in determining the participant's pension amount once the employee retires.  Indeed, Northrop Gruman here utilized the employee's FAE as a factor in its Retirement Benefit Formula for purposes of determining the employee's pension benefits (SOF ¶¶ 9-11).  This is because, as noted above, with a defined benefit plan the employee, upon retirement, is entitled to a fixed periodic payment paid out of a general pool of assets rather than payment from an individual, dedicated account.  *Hughes Aircraft*, 525 U.S. at 439.

Defined benefits plans like Northrop Grumman's, in which the payment is determined by consideration of unallowable costs (salary above the cap), are directly associated with unallowable costs and thus precluded by operation of FAR 31.201-6(a).  Defined contribution plans, however, are not *associated* with payment above the statutory cap but are, in fact, part of what makes up the compensation subject to the cap.  Thus, it is appropriate and fitting that defined contribution pension plans be listed in FAR 31.205-6(p) while defined benefit plans are not.  Indeed, including defined benefits plans in FAR 31.205-6(p) would have fit poorly into the regulatory framework since it is not a question of the value, as compensation, of the defined benefit plan pension that is at issue, but that it is *based* on compensation which is what FAR 31.205-6(p) defines.

Accordingly, the fact that defined benefit plans are not identified in FAR 31.205-6(p)(1)(i) is not in and of itself determinative of whether the cap set forth in FAR 31.205-6(p) applies to Northrop Grumman's defined benefit plans where (1) amounts in excess of the FAR cap are included in determining Northrop Grumman's pension costs, and (2) Northrop Grumman then subsequently seeks reimbursement of those costs through submission of its indirect cost rate proposal.  See FAR 52.216-7, ALLOWABLE COST AND PAYMENT (AUG 2018) (discussing submission of indirect cost rate proposals).  Rather, as noted by the government, "the challenged pension costs are unallowable because of their relationship to expressly unallowable compensation" (gov't cross-mot. at 31).[15]  The FAR 31.205-6(p) compensation cap still "applies to the underlying bonus and salary utilized in the Retirement Benefit Formulas' compensation factor" even though pension costs themselves are not subject to the FAR compensation cap (gov't reply at 2).

C.  Import Of and Distinction Between Cost Allocability and Cost Allowability

---

[15] An expressly unallowable cost is "a particular item or type of cost which, under the express provisions of an applicable law, regulation, or contract, is specifically named and stated to be unallowable."  48 C.F.R. § 31.001.

Northrop Grumman suggests that the relevant inquiry regarding the allowability of its pension costs is whether it complied with CAS 412 and 413 in determining "the composition and measurement of pension costs and the manner in which to adjust and allocate the same" (app. mot. at 8).  As support, appellant cites FAR 31.205-6(j)(1), which provides that "[t]he contractor shall measure, assign, and allocate the costs of all defined-benefit pension plans and the costs of all defined-contribution pension plans in compliance with 48 CFR 9904.412-Cost Accounting Standard for Composition and Measurement of Pension Cost, and 48 CFR 9904.413-Adjustment and Allocation of Pension Cost."  According to appellant, because FAR 31.205-(6)(j)(2) and (5) "direct that the amount of a plan's cost for a given year is allowable when measured in accordance with" CAS 412 and 413, appellant's "Retirement Benefit Formula is irrelevant to the allowability of any portion of the measured cost of its" defined benefit pension plan (app. resp. at 2).

Appellant's argument ignores the distinction between cost allocability and cost allowability.  Cost allocability is determined pursuant to CAS and cost allowability is governed by FAR Part 31.2.  *Boeing North American, Inc. v. Roche*, 298 F.3d 1274, 1280 (Fed. Cir. 2002).  "Although a cost may be allocable to a contract, the cost is not necessarily allowable." *Id.*  "CAS encompasses a series of accounting standards intended to achieve uniformity and consistency in measuring, assigning, and allocating costs to contracts with the federal government." *Rice v. Martin Marietta Corp.*, 13 F.3d 1563, 1565 (Fed. Cir. 1993) (citing Preamble to CAS 401, 37 Fed. Reg. 4139 (1972)).  "Since the allowability of a cost remains the province of the procuring agencies, the DOD may limit costs based upon rational procurement policies . . . ." *United States v. Boeing Corp.*, 802 F.2d 1390, 1394 (Fed. Cir. 1986).  "Government agencies have the authority to disallow types and amounts of properly allocated costs for various policy reasons." *Martin Marietta*, 13 F.3d at 1569; *see also Kearfott Guidance & Navigation Corp. v. Rumsfeld*, 320 F.3d 1369, 1377 (Fed. Cir. 2003) (discussing costs allowability in the context of FAR 31.205–52 and noting "the FAR provision merely operates as an after-the-fact ceiling on the extent to which certain costs will be allowed once they have been allocated among the acquired asset values under the CAS provisions").

The government responds to appellant's argument, stating "the Retirement Benefit Formulas are not cost measurement techniques under CAS and the Government's FAR disallowance does not conflict with CAS" (gov't reply at 13).  The government properly notes that both "parties agree [that] the Retirement Benefit Formulas are not cost measurement techniques under CAS" (gov't reply at 10 (citing app. resp. at 41-44)), and "that CAS 412 does not focus on the mechanics of the pension benefit cost calculation" (gov't reply at 4 (citing app. resp. at 41)).  According to the government, "[t]he fact that costs have been incurred, measured, and allocated in accordance with CAS, however, does not prohibit a determination that those costs are unallowable under the FAR" (gov't reply at 8).  We Agree.

22

"[T]he concept of allocability is addressed to the question whether a sufficient 'nexus' exists between the cost and a government contract," while the "concept of allowability is addressed to the question whether a particular item of cost should be recoverable *as a matter of public 'policy.'*"  *Boeing North American*, 298 F.3d at 1281 (citations omitted) (emphasis added).  As a matter of public policy, Congress enacted the 1998 Department of Defense Authorization Act, Pub. L. 105-85, § 808, 111 Stat. 1629, 1636 (1997), which set a "[l]imitation on [the] allowability of compensation for certain contractor personnel."[16]  *See AAAA Enterprises, Inc.*, ASBCA No. 28336, 84-1 BCA ¶ 17,189 at 85,591 ("A duly enacted statute *is* public policy") (emphasis in original).  Through issuance of Pub. L. 105-85, Congress spoke directly to its desire to set limitations on the allowability of executive compensation over a certain amount.  *See United States v. American Trucking Ass'ns*, 310 U.S. 534, 542-543 (1940) (the function of courts in the interpretation of statutes "is to construe the language so as to give effect to the intent of Congress" and follow "their plain meaning"); *see also In Re City of Houston*, 731 F.3d 1326, 1330-31 (Fed. Cir. 2013) ("[t]here is a 'strong presumption that the plain language of the statute expresses congressional intent [which] is rebutted only in rare and exceptional circumstances'" (quoting *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 11 (2008))).[17]

FAR 31.205-6(p) was issued to implement that portion of the Pub. L. 105-85 that limited the allowability of certain executive compensation amounts and reflects Congress' intent to place a cap on compensation, such that a contractor's salary or bonus payments to its employees over a certain amount are deemed unallowable.  See W. NOEL KEYES, GOVERNMENT CONTRACTS UNDER THE FEDERAL ACQUISITION REGULATION, § 31.12 (3d ed., OCT 2022 UPDATE).  Appellant does not argue it is entitled to reimbursement for compensation costs paid employees in excess of the cap during the time in which its plan participants were employed.  Yet, appellant argues it is entitled to

---

[16] Congress first enacted restrictions on personal compensation reimbursement with the passage of the Department of Defense Appropriation Act, 1995, Pub. L. 103-335, § 8117, 108 Stat. 2599, 2649 (1994).  In 2011, through enactment of the National Defense Authorization Act for FY 2012, Pub. L. 112-81, § 803, 125 Stat. 1298, 1305 (2011), Congress extended application of the compensation cap from contractor senior executives to any contractor employee.

[17] FAR 31.201-6(e)(3) likewise speaks to the importance of public policy, stating, "[w]hen a selected item of cost under 31.205 provides that directly associated costs be unallowable, such directly associated costs are unallowable only if determined to be material in amount in accordance with the criteria provided in paragraphs (e)(1) and (e)(2) of this subsection, except in those situations where allowance of any of the directly associated costs involved *would be considered to be contrary to public policy*." (emphasis added).

reimbursement for pension benefits paid those same employees once they retire, even though those benefits are based, in part, upon a formula that includes compensation paid in excess of the cap. In its briefs, appellant cites no affirmative statement in any statute or regulation specifically stating that Congress intended to make allowable pension costs that include, in the formula utilized to determine those costs, unallowable executive compensation paid in excess of the cap.

Appellant states that "the government's argument, at its core, is simply a plea that the Board adopt a new policy regarding the reasonableness of defined benefit, pay-as-you-go ("DB PYG") pension costs" and that such a new policy would be contrary to FAR 31.205-6(j) and 31.205-6(p)(1)(i), as well as CAS 412 and 413 (app. reply at 2). However, none of the provisions cited by appellant expressly state that contractors are entitled to reimbursement for pension costs based, in part, upon a pension plan formula that includes compensation paid in excess of the cap. According to appellant, "[w]hen it comes to pension costs, the FAR Council addressed that subject in FAR § 31.205-6(j), which requires contractors to measure pension costs in accordance with CAS 412 and 413," and that "CAS expressly permits measurement based on a 'benefit formula' that considers 'salary,' with no mention whatsoever of a limitation on the amount of salary to be included" (app. reply at 12 (citing CAS 412-50(b)(2))). As appellant admits, however, "CAS 412 and 413 . . . do not focus on the mechanics of the pension benefit cost calculation" (app. resp. at 41).

Appellant concludes, stating that "[t]he clear regulatory text leads inexorably to the conclusion that the FAR Council and the CAS Board understood that contractors could permissibly use salary as a formula factor and neither regulator placed any further limitations" (app. reply at 12). Appellant's arguments as to the conclusions of the FAR Council and the CAS Board are, at best, wishful thinking. One part of the regulatory text - appropriately - simply does not address the issue presented, i.e., the permissibility of a pension formula that includes as a factor compensation in excess of the limitations placed by Congress on such compensation, while another portion, FAR 31.201-6(a) squarely applies to this case. Through issuance of Pub. L. 105-85, and Pub. L. 112-81, Congress stated its desire to set limitations on the allowability of executive compensation over a certain amount.

Appellant also argues that "[t]o make the government-requested change to the allowability policy applicable to the cost of a PYG DB pension plan, the Board would have to step improperly into the shoes of the FAR Council and create that policy change" (app. resp. at 1). We disagree. As the government properly notes, "[i]f Congress intended to limit the Government's payment of contractor employees during their working years, it is an absurd conclusion that Congress intended for the very same employees, *upon retirement*, to receive an unlimited benefit payment simply because NG utilized a pay-as-you-go defined-benefit pension plan" (gov't reply at 42) (emphasis

added).  Our decision is mandated by the terms of the FAR and in keeping with Congress' desire to set limitations on the allowability of executive compensation.

VII.  <u>Alternatively, a Portion of Appellant's Pension Costs Are Unreasonable Because They Are Derived from Unallowable Compensation</u>

Although we have found these pensions costs to be unallowable for the simple reason that the FAR precludes them, we may also, in the alternative, analyze them based upon an earlier opinion of ours, *DynCorp Int'l LLC*, ASBCA No. 61950, 20-1 BCA ¶ 37,703, which found severance pay costs based upon pay above the salary cap to be unreasonable.  As discussed above, appellant has the burden of establishing that its pension costs are reasonable.  Our previous decision on jurisdiction in this appeal denied Northrop Grumman's motion to dismiss that portion of the government's cross-motion for summary judgment that argued Northrop Grumman's costs were unallowable under FAR 31.201-3.  *Northrop Grumman I* at 184,179.  Northrop Grumman had argued we lacked jurisdiction to consider the issue of reasonableness because it was not addressed in the COFD.  *Id*.  In finding jurisdiction, our decision relied, in part, on *DynCorp*, 20- 1 BCA ¶ 37,703 at 183,043, in which this Board was presented with the question whether severance payments made to a contractor's former chief executive officer were unallowable where the severance payments were based, in part, upon compensation paid in excess of the FAR 31.205-6(p) cap.  *Id*. at 184,175-176.  The Board held that a portion of the severance payments derived from salary and bonus amounts in excess of the FAR 31.205-6(p) cap was unallowable as unreasonable, stating that "[t]he statutory caps establish '[t]he contractor's responsibilities to the Government . . . and the public at large,'" which "is the responsibility not to claim salary costs over the statutory limit." *DynCorp*, 20-1 BCA ¶ 37,703 at 183,043 (citing FAR 31.201-3(b) ("What is reasonable depends upon a variety of considerations and circumstances, including -- . . . (3) The contractor's responsibilities to the Government . . . .").

The Board observed that "[t]his conclusion is just common sense, there is nothing magic about a severance pay calculation that converts unallowable salary into allowable severance payments."  *Id*.  The Board summarized the basis for its holding, stating, "[b]ottom line: unallowable salary cost used in a severance pay calculation results in unallowable severance costs – unallowable in, unallowable out."  *Id*. at 183,044.  The Board's holding in *DynCorp* applies equally here:  there is nothing magic about a pension benefits calculation that converts unallowable compensation over the cap into allowable pension payments.

Appellant attempts to distinguish this appeal from *DynCorp*, stating that the Board there failed to discuss the cost reasonableness factors set forth in FAR § 31.201-3(b)(1)-(4) (app. reply at 3).  Appellant is incorrect.  The Board's decision lists all four factors. *DynCorp* at 183,042-043.  Regarding FAR 31.201-3(b)(1), which concerns costs that are "generally recognized as ordinary and necessary for the conduct of the contractor's

25

business or the contract performance," the Board did not question whether severance payments are ordinary and necessary, as the Board focused instead upon the government's right to receive a *deduction* in the amount of the severance pay. *Id*. at 183,040 (emphasis added). Regarding the government's calculation of that deduction, however, the Board noted that DynCorp "raises reasonable concerns in its claim over how the deductions were calculated by DCAA (and they appear to remain to be negotiated), that issue is not before us today." *Id.* Regarding the second factor set forth at FAR 31.201-3(b)(2), "[g]enerally accepted sound business practices, arm's-length bargaining, and Federal and State laws and regulations," the Board specifically discussed DCAA's examination of severance terms set forth in other employment agreements. *Id.* at 183,042. Ultimately, however, the Board focused upon the third factor, "[t]he contractor's responsibilities to the Government . . . and the public at large" (FAR 31.201-3(b)(3)), which the Board found determinative of the issue. *Id.* at 183,043. Although appellant argues here that it met all four reasonableness factors set forth in FAR 31.201-3(b), we hold that appellant, like the contractor in *DynCorp*, failed to meet factor (b)(3) and its "responsibilities to the Government . . . and the public at large" by utilizing a Retirement Benefits Formula that includes as a factor the plan participants' actual compensation earned and does not exclude compensation in excess of the FAR 31.205-6(p) cap.

Appellant also argues that *DynCorp* has no application to this appeal, arguing that FAR 31.205-6(p) "is silent regarding severance, whereas [that provision] expressly addresses certain select forms of pension costs and, critically, intentionally excludes defined benefit pension plans" (app. reply at 3). As support, appellant states that "[a]s the government's brief makes clear, the FAR Council purposefully excluded defined benefit pension plans from FAR § 31.205-6(p) coverage" (app. reply at 7 (citing cross-mot. at 34-35 (citing Ex. G-7, Memo. for Director, DAR Council, FAR CASE 97-303 (June 9, 1998) at 2-4 ("defined benefit compensation plan costs were excluded from the [then-interim] rule definition of 'compensation'[.]")))). Appellant misstates the government's position.

In actuality, the government's brief labels the regulatory history of the FAR cap "minimally instructive," and that it "contradicts Northrop Grumman's argument that the drafters purposefully set forth policy" suggested by appellant (gov't cross-mot. at 34). The government notes that "[t]he regulatory history is unclear as to why OFPP thought the expressly covered costs should be limited by the elements that went into the SEC benchmark calculation, even if that benchmark failed to fairly reflect all the elements of cost that the drafting committee recognized the statute included" (*id.* at 35). As support, the government notes that (1) "[t]he OFPP Administrator was charged with reviewing commercially available surveys to determine the benchmark compensation," (2) "the Securities and Exchange Commission disclosure data (which cannot be separately broken down), [ ] includes the cost of employer contributions to defined contribution pension

plans [ ]," (3) "[p]ublic comments pointed out this conflict with the statute, which includes all deferred compensation," and (4) "[t]he DAR [Defense Acquisition Regulations] Committee provided no reason other than this was 'at the request of OFPP, to ensure an 'apples apples-to-apples' comparison with its benchmark compensation amount'" (*id.* at 34-35). We agree with the government that the regulatory history does not indicate an "express intent to impose no limits on the amount of employer contributions to defined-benefit pension plans that are reimbursable under Government contracts" (*id.* at 34).

At bottom, appellant's argument that defined benefit pension plans were "intentionally" excluded from FAR 31.205-6(p) is based upon the observation that the provision lists defined contribution plans, but not defined benefit plans (app. mot. at 11). Therefore, according to appellant, FAR 31.205-6(p) has no application to defined benefit plans. As we already have held, however, FAR 31.205-6(p) mentions defined contribution plans, but only to the extent of the employer's contribution to the defined contribution plan, whereas defined benefit plans have no similar employer contribution scheme applicable to pension plan participants while employed.

Like defined benefit plans, severance payments are not listed in FAR 31.205-6(p). It does not follow, however, that Congress therefore intended compensation paid in excess of the FAR 31.205-6(p) cap would be properly included as a basis to determine the amount of allowable severance costs. In *DynCorp*, we found "that the portion of the severance payments derived from unallowable salary and bonus amounts above the statutory caps are likewise unallowable." 20-1 BCA ¶ 37,703 at 183,043. We see no legitimate reason or basis upon which to limit the application of *DynCorp* to the allowability of severance costs.

To the extent appellant argues that the FAR 31.205-6(p) cap is the sole statutory limitation on allowable senior executive compensation costs (app. mot. at 12), the basis of that statutory limitation is set forth in Pub. L. 105-85 and Pub. L. 112-81. The statutory limitation applies as a constraint to appellant's payment of compensation paid above that cap. We find that the methodology utilized by appellant to determine its pension benefit payments is unreasonable as the formula does not exclude the over-the-cap compensation and results in increased pension costs based upon unallowable bonus and salary. Our decision in *DynCorp* supports such a finding, whereas the contractor's severance payments in that appeal, like the pension costs here, "were calculated in part using salary and bonus amounts that exceeded the statutory caps." 20-1 BCA ¶ 37,703 at 183,043.

VIII.  <u>The Government Is Not Estopped from Disallowing the Pension Costs at Issue Here</u>

The allowability of pension costs is an issue whose evolution spans several decades.  *See Boeing Co.*, ASBCA No. 28342, 85-3 BCA ¶ 18,435 at 92,582-85 (discussing history and evolution of ASPR 15-205.6(f), the predecessor to FAR 31.205-6(j)); *Sanders Associates, Inc.*, ASBCA No. 15518, 73-2 BCA ¶ 10,055 at 47,168 ("Under ASPR 15–205.6(f) contributions to pension plans are considered deferred compensation and are allowable costs to the extent that they are, *inter alia*, 'reasonable in amount' (15–205.6(f)(2)(ii)) . . . .") (footnote omitted).  Appellant recognizes that "FAR § 31.201-6 and its definition of a 'directly associated cost' pre-dates the 1995 promulgation of FAR § 31.205-6(p) by more than 10 years" (app. mot. at 12).  FAR 31.205-6(p), which implemented the 1998 Department of Defense Authorization Act, Pub. L. 105-85, and subsequent passage of the National Defense Authorization Act for FY 2012, Pub. L. 112-81, which expanded coverage to all contractor employees, is evidence of the continuing evolution of this issue.

In its statement of the case, Northrop Gruman states that, "[f]or decades, the government has recognized that the cost of a contractor's nonqualified defined benefit pension plan is an allowable cost," and that despite this long recognition "and no substantive change in any relevant regulation," DCAA now "has disallowed a portion of Northrop Grumman's cost of its nonqualified defined benefit pension plans accounted for on a pay-as-you-go basis" (app. mot. at 1).  This argument is of no real moment, as the government is not somehow estopped from disallowing the challenged costs simply because DCAA did not question the costs in prior audits.  Absent affirmative misconduct, DCAA's prior allowance of an alleged improper indirect cost submission does not constitute a waiver of contractor compliance.  *Tech. Sys.,* 17-1 BCA ¶ 36,631 at 178,377 ("an auditor's failure to challenge a cost in one audit does not require application of the principle of retroactive disallowance nor does it constitute a course of conduct precluding the government from disallowing the costs in subsequent audits").  Northrop Grumman has made no allegations of government misconduct here.

CONCLUSION

Appellant's motion for partial summary judgment is denied.  The government's cross-motion for partial summary judgment is granted.  The parties shall file a joint status report no later than 45 days from the date of this decision setting forth a proposed schedule for further proceedings.

Dated:  July 5, 2023

DAVID B. STINSON
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

DOCUMENT FOR PUBLIC RELEASE.  The decision issued on July 5, 2023, is subject to an ASBCA Protective Order.  This version has been approved for public release.

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62165, Appeal of Northrop Grumman Corporation, rendered in conformance with the Board's Charter.

Dated:  July 6, 2023

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals